UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

----------------------------------------------------------------------X

24 Civ.1892

MARK HARRISON,

Plaintiff,

**COMPLAINT**

-against-

**JURY TRIAL DEMAND**

AMAZON.COM INC., AMAZON.COM LLC, AMAZON LOGISTICS INC., and ANTIONE TYSHAN GUILLEN,

**ECF CASE**

Defendants.

----------------------------------------------------------------------X

Plaintiff MARK HARRISON ("Plaintiff"), by his attorneys JON L. NORINSBERG, ESQ., PLLC, complaining of Defendants, respectfully alleges the following, based upon his own personal knowledge and/or upon information and belief:

## PRELIMINARY STATEMENT

1. This action arises from a severe collision between a 2021 Ford van bearing New Jersey State license plate number XKJM22, with an "Amazon" logo prominently displayed on the exterior of the vehicle ("the Amazon Van"), and a 2015 Nissan Altima sedan owned and operated by Plaintiff MARK HARRISON on April 15, 2023, causing significant and permanent injuries to Plaintiff. This action seeks redress against Defendants for negligence, carelessness, and recklessness, in their ownership, operation, maintenance and control of the subject vehicle.

2. As a result of the subject accident, Plaintiff MARK HARRISON, has received over ten (10) months of medical treatment including physical therapy and epidural shots. Plaintiff continues to receive treatment and may be required to undergo surgery to treat his injuries, all of which are believed to be permanent and continuing in nature, duration, and effect. In addition, Plaintiff MARK HARRISON has incurred medical and other expenses, has been unable to pursue his usual vocations,

and has suffered and will continue to suffer from severe physical and emotional pain as a result of this accident.

**JURY DEMAND**

3. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**JURISDICTION AND VENUE**

4. Jurisdiction arises under 28 U.S.C. §1332, as there is complete diversity amongst the parties in this action, and the matter in controversy exceeds the sum specified by 28 U.S.C. § 1332.

5. Supplemental jurisdiction over any state law claims asserted herein is founded upon 28 U.S.C. §§ 1367.

6. Venue is properly laid in the District of New Jersey under 28 U.S.C. § 1391(b)(3), in that this is the District where multiple Defendants are subject to the Court's personal jurisdiction.

**PARTIES**

7. At all times hereinafter mentioned, Plaintiff MARK HARRISON (hereinafter "Plaintiff") was, and still is, a resident of the State of New York, residing at 2000 Franklin Road, in the County of Nassau and the State of New York.

8. At the time of the subject occurrence, Plaintiff was operating a 2015 Nissan Altima sedan which Plaintiff owned. Plaintiff continues to own said vehicle.

9. At all times hereinafter mentioned, Defendant AMAZON.COM INC was, and still is, a foreign corporation authorized to do business in the State of New York, with its principal place of business located at 410 Terry Avenue North, Seattle, Washington 98109.

10. At all times hereinafter mentioned, Defendant AMAZON.COM SERVICES LLC was, and still is, a Delaware limited liability company and a citizen of the State of Delaware and the

State of Washington, by virtue of its members being residents of the State of Washington and the State of Delaware. A copy of Amazon.com Services LLC's application by Foreign Limited Liability Company for Authorization to Transact Business in Florida is annexed hereto as Exhibit ("Ex.") A. The members of Amazon.com Services LLC are Michael D. Deal and Amazon.com Sales Inc. See Ex. A. at ¶ 8. Michael D. Deal, Vice President and Associate General Counsel of Amazon.com Inc., is a citizen and resident of the State of Washington. Amazon.com Sales Inc. is a Delaware corporation with its principal place of business located at 410 Terry Avenue North, Seattle Washington, 98109.

11. At all times hereinafter mentioned, Defendant AMAZON.COM SERVICES LLC was and is a wholly owned subsidiary of Defendant AMAZON.COM INC.

12. Upon information and belief, AMAZON.COM INC. and AMAZON.COM SERVICES LLC (collectively, "AMAZON") regularly conduct business, or solicit business, in the State of New York.

13. At all times hereinafter mentioned, Defendant AMAZON owned the Amazon Van.

14. At all times hereinafter mentioned, Defendant AMAZON operated the Amazon Van.

15. At all times hereinafter mentioned, Defendant AMAZON maintained the Amazon Van.

16. At all times hereinafter mentioned, Defendant AMAZON controlled the Amazon Van.

17. At all times hereinafter mentioned, Defendant AMAZON employed Defendant ANTIONE TYSHAN GUILLEN ("GUILLEN") to operate the Amazon Van.

18. At all times hereinafter mentioned, Defendant GUILLEN was, and still is, a resident of the State of New Jersey, residing at 205 Jelliff Avenue, in the County of Essex and the State of New Jersey.

19. At all times hereinafter mentioned, Defendant AMAZON selected GUILLEN to operate the Amazon Van.

20. At all times hereinafter mentioned, Defendant AMAZON entrusted GUILLEN to operate the Amazon Van.

21. At all times hereinafter mentioned, Defendant AMAZON LOGISTICS, INC. ("LOGISTICS") was, and still is, a foreign limited liability company authorized to do business in the State of New Jersey, with business operations in multiple states, including but not limited to, Pennsylvania, New Jersey and New York.

22. Upon information and belief, Defendant LOGISTICS entered into a contract with Defendant AMAZON for the delivery of goods and products purchased by consumers residing in the states of Pennsylvania, New Jersey and New York.

23. Upon information and belief, Defendant LOGISTICS is a designated Amazon Delivery Service Partner ("DSP").

24. At all times hereinafter mentioned, Defendant LOGISTICS owned the Amazon Van.

25. At all times hereinafter mentioned, Defendant LOGISTICS operated the Amazon Van.

26. At all times hereinafter mentioned, Defendant LOGISTICS maintained the Amazon Van.

27. At all times hereinafter mentioned, Defendant LOGISTICS controlled the Amazon Van.

28. At all times hereinafter mentioned, Defendant LOGISTICS employed Defendant GUILLEN to operate the Amazon Van.

29. At all times hereinafter mentioned, Defendant LOGISTICS selected GUILLEN to operate the Amazon Van.

30. At all times hereinafter mentioned, Defendant LOGISTICS entrusted GUILLEN to operate the Amazon Van.

31. At all times hereinafter mentioned, Defendant GUILLEN was an employee, agent and/or servant of Defendant AMAZON.

32. At all times hereinafter mentioned, Defendant GUILLEN acted within the scope of his employment and in furtherance of Defendant AMAZON's business.

33. At all times hereinafter mentioned, Defendant GUILLEN was an employee, agent and/or servant of Defendant LOGISTICS.

34. At all times hereinafter mentioned, Defendant GUILLEN was acting within the scope of his employment and in furtherance of Defendant LOGISTICS' business.

## FACTS

35. On April 15, 2023, at approximately 2:44 p.m., Plaintiff MARK HARRISON was operating a 2015 Nissan Altima sedan travelling northbound on Monmouth Street, in the County of Hudson, in Jersey City and in the State of New Jersey.

36. On April 15, 2023, at approximately 2:44 p.m., Defendant GUILLEN was operating an Amazon Van travelling northbound on Monmouth Street, in the County of Hudson, in Jersey City and in the State of New Jersey.

37. Monmouth Street, through which both Plaintiff and Defendant traveled, consists of three lanes: a parking lane on the left, a left-turn only lane in the middle, and a straight-through lane on the right.

38. Prior to reaching the Monmouth Street and Second Street intersection, Defendant GUILLEN, positioned in a designated straight-through lane, stopped the Amazon Van to make a delivery.

39. Defendant GUILLEN unlawfully parked the Amazon Van by pulling over to the right and partially mounting the sidewalk directly in front of a no stopping or standing sign.

40. At the stated time and location, Plaintiff MARK HARRISON, also in a straight-through lane on Monmouth Street, observed the Amazon Van in front of him, parked with the passenger-side wheels on the sidewalk and the driver-side wheels partially obstructing the lane, without any hazard lights activated.

41. Additionally, Plaintiff MARK HARRISON noticed other vehicles ahead of him maneuvering around the parked Amazon Van to continue straight on Monmouth Street.

42. Subsequently, Plaintiff MARK HARRISON began to maneuver around the Amazon Van when Defendant GUILLEN suddenly, and any warning, executed a sharp left turn to leave the illegal parking spot.

43. Defendant GUILLEN's abrupt move to pull out the illegally parked Amazon Van led to a forceful collision between the van and Plaintiff's sedan, specifically impacting the back passenger-side door and bumper.

44. The Amazon Van involved in the collision with Plaintiff was owned, operated, maintained, and controlled by Defendant AMAZON and/or LOGISTICS, was driven by Defendant GUILLEN during the incident.

**Plaintiff Suffers Severe, Permanent and Disabling Injuries as a Result of this Accident**

45. The aftermath of the fateful accident left Plaintiff grappling with severe, permanent, and incapacitating injuries that have altered the course of his life.

46. In the wake of the incident, Plaintiff endured excruciating pain and sought medical attention to address the profound impact on his back and neck.

47. Delving into the specifics, Plaintiff embarked on a grueling journey of recovery, engaging in intensive physical therapy sessions at Long Island Physical Therapy Group. Specifically, Plaintiff has received treatment three (3) times per week for over ten (10) months.

48. Plaintiff continues to receive rigorous regimen of physical therapy three (3) times per week, coupled with undergoing the discomfort of epidural shots to alleviate his persistent back pain.

49. As a direct result of the negligence of Defendant, Plaintiff has suffered, and will continue to suffer, severe, permanent and disabling injuries for the rest of his life.

50. At the time of the subject accident, Plaintiff was employed as a Human Resources Consultant. Plaintiff has not been able to return to work since the date of the accident.

**Defendant GUILLEN Lies to the Police to Conceal His Own Negligence and Save His Job.**

51. Following the incident, Defendant GUILLEN apologized to Plaintiff and informed him that he did not see Plaintiff in his mirror when pulling out.

52. Subsequently, during an interview with law enforcement personnel, Defendant GUILLEN changed his story and provided a false, deceptive, and dishonest information regarding the facts and circumstances of the accident.

53. Specifically, Defendant GUILLEN claimed, falsely, that Plaintiff had attempted a lane change on Monmouth Street from the designated middle left turn-only lane to the right straight-through lane, leading to the collision with the Amazon Van.

54. Defendant GUILLEN's account to the authorities constituted a deliberate misrepresentation. In actuality, it was Defendant GUILLEN, not Plaintiff, who triggered the accident by unlawfully parking and making a sudden left turn without signaling to exit the parking space.

55. Moreover, Defendant GUILLEN falsely claimed to law enforcement that Plaintiff confessed to attempting a lane change shortly after the accident. Plaintiff did not make such an assertion, and a review of the police officer's body-worn camera footage will undoubtedly expose GUILLEN's falsehoods.

56. Defendant GUILLEN propagated these lies to authorities to mask his own negligent and irresponsible actions, aiming to shift blame onto Plaintiff for the collision.

57. Additionally, Defendant GUILLEN disseminated these false statements in an effort to protect his position as a driver employed by Defendant AMAZON and/or LOGISTICS.

58. Notwithstanding GUILLEN’s lies, there can be no question that the subject accident was proximately caused by the negligence, carelessness, and recklessness, gross recklessness, and gross negligence of the Defendants in their ownership, operation, maintenance and control of the aforementioned their vehicles.

**AMAZON’s Extensive History of Reckless Driving and Serious Accidents**

59. The subject accident was not the first one involving an Amazon van. In fact, in the past six years -- when Amazon first started doing its own deliveries through Delivery Service Partners -- Amazon vehicles have been involved in a large number of serious accidents, resulting in 6 (six) deaths and many other severely injured victims.

60. The reason why so many Amazon vehicles have been involved in serious accidents is that Amazon has imposed an extremely burdensome -- and often impossible to meet -- numerical requirement of packages that must be delivered by its DSPs in a given day.

61. Specifically, Amazon drivers are often required to deliver over 250 packages a day, and sometimes more than that, which works out to a frantic pace of less than two minutes per package, based on an eight-hour shift. If Amazon drivers cannot meet this requirement, they will be fired.

62. As a result of this requirement -- which Amazon imposes on all DSPs -- Amazon drivers must race through their delivery schedules each and every day, trying to complete their drop-offs as fast as possible and stay on schedule. There is enormous pressure on the drivers to meet their delivery quotas. If they cannot do so, they will lose their jobs.

63. In the race to meet Amazon's delivery quota, drivers are often careless and inattentive, operating at excessive rates of speed and with little regard for their own safety or the safety of others. The result is that Amazon drivers have caused many serious accidents, which has been documented in several online investigations.

64. According to one such investigation, "[p]ublic records document *hundreds of road wrecks* involving vehicles delivering Amazon packages in the past five years, with Amazon itself named as a Defendant in at least *100 lawsuits* filed in the wake of accidents, including at least six fatalities and numerous serious injuries." BuzzFeedNews.com, https://www.buzfeednews.com/article/carolineodonovan/amazon-next-day-delviery-deaths, The Cost of New-Day Delivery," last viewed on July 5, 2020. (Ex. B) (emphasis supplied).

65. As the *BuzzFeed News* article further notes, "with little training, and often piloting vans in dangerous states of disrepair, Amazon drivers have crashed into cars, bicycles, houses, people and pets." (Id.)

66. These findings were based on a review of "government records, thousands of court files, and interviews with dozens of current and former Amazon employees, delivery company operators, managers and drivers." (Id.)

67. The dangers posed by Amazon's delivery system have become so alarming that several U.S. Senators felt compelled to send a letter to Amazon's CEO, Jeff Bezos, imploring him to change the way it does deliveries. (Ex. B).

68. In this letter, dated September 12, 2019, Senator Richard Blumenthal, along with Senators Elizabeth Warren and Sherrod Brown, wrote to Mr. Bezos to "express [their] concerns regarding numerous reports that Amazon's delivery standards are imposing *unfair and dangerous conditions* upon the delivery companies the drivers who deliver its packages." (Id. at 1) (emphasis supplied).

69. In this letter, the Senators noted the deadly consequences of Amazon's delivery policies, as measured from June 2015 to September 2019:

> According to a joint investigation by *ProPublica* and *The New York Times*, there have been more than 60 accidents since June 2015 involving Amazon delivery contractors. Innocent bystanders – as young as 9 months old – have lost their lives and sustained serious injuries from *drivers improperly trained and under immense pressure by Amazon to meet delivery deadlines*. It is simply unacceptable for Amazon to turn the other way as drivers are forced into potentially unsafe vehicles and given dangerous workloads."

(Ex. B) (internal citations and quotation marks omitted) (emphasis supplied).

70. While Amazon has repeatedly denied responsibility for "the pattern of dangerous operating tendencies by drivers" (id.), the Senators emphatically rejected Amazon's claims, noting that "[i]t is clear that the aggressive managerial style Amazon forces upon the delivery companies it contracts with is a major contributor to the strenuous conditions drivers face and has led to a chain of worker abuse." (Id.) Specifically, "delivery companies that do not fall in line to Amazon's demands can have their routes diminished, contracts terminated or invoices unfilled." (Id.).

71. In short, "the relentless pressure created by Amazon's delivery policies raises serious concerns about the working conditions its independent contractors face …." (Id.)

72. Apart from the dangers posed by Amazon's delivery policies, there are other factors that have contributed to the high number of accidents involving Amazon drivers. These factors include, but are not limited to: i) Amazon's insistence that drivers use its "Rabbit" routing technology,

which is notoriously flawed and has often caused drivers to make quick, and frequently dangerous, route corrections in order to find a given address; ii) Amazon's deliberate attempt to avoid DOT's safety regulations, which the above Senators described as "Amazon's evasive practices and moves to cut regulatory corners …." by "using a variety of underhanded tactics to skirt Department of Transportation oversight …." (Ex. C at 2); iii) Amazon's failure to institute mandatory rules, regulations and procedures to ensure proper that its DSP delivery drivers have proper training and qualifications; and iv) Amazon's failure to ensure that its DSPs properly maintain its delivery on proper working conditions, resulting in "poorly maintained vans, with underinflated and balding tires, cracked or missing sideview mirrors … [F]requently they have no backup cameras, and many don't even have a rear window." (Ex. B).

73. Upon information and belief, all of the above factors, as well as Amazon's mandatory delivery requirements, as set detailed above, caused and/or contributed to the accident on April 15, 2023 between the Amazon Van and Plaintiff MARK HARRISON, resulting in severe and permanent injuries to Plaintiff.

74. The injuries and damages suffered by the Plaintiff as aforesaid are personal injuries either exempt from or meeting the requirements of one or more of the categories set forth in N.J.S.A. 39:6A-8(a), if said Statute is applicable to the Plaintiff's cause of action as set forth in this Complaint.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST**
**DEFENDANT AMAZON**
(Negligence and Vicarious Liability)

75. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "74" as if more fully set forth herein.

76. On or about April 15, 2023, Defendant AMAZON, was the owner of the Amazon Van bearing New Jersey State license plate number XKJM22.

77. On or about April 15, 2023, the Amazon Van, was being operated by Defendant GUILLEN with the knowledge and/or consent of the owner, Defendant, AMAZON, who selected, trained and entrusted GUILLEN with the operation of the Amazon Van.

78. Upon information and belief, Defendant GUILLEN had a history of prior accidents, moving violations, driving infractions, and/or other unsafe driving practices that AMAZON, in the exercise of reasonable care, knew or should have known about, and should not have entrusted Defendant GUILLEN entrusted with the responsibility of operating the Amazon Van.

79. On or about April 15, 2023, the Amazon Van that Defendant GUILLEN was operating came into contact with, and was otherwise involved in, a violent collision with Plaintiff's sedan near the intersection of Monmouth Street and Second Street, in Jersey City, New Jersey.

80. The aforesaid accident was caused by reason of the negligence of Defendant AMAZON, and in no part by Plaintiff MARK HARRISON.

81. Defendant AMAZON was negligent in the ownership, operation, maintenance and control of the Amazon Van in violation of Federal, State and Local Regulations, Ordinances, Laws and Vehicle and Traffic Laws to be specifically set forth in discovery.

82. Defendant AMAZON was further negligent in implementing mandatory rules, regulations and procedures, as set forth above, that forced DSP drivers to drive with excessive speed and/or in an unsafe manner in order to keep on schedule and meet their delivery quotas.

83. Defendant AMAZON was further negligent in: i) requiring its drivers to use its "Rabbit" routing technology, which causes it drivers to make quick, and frequently dangerous, route corrections in order to find their delivery addresses; ii) engaging in "evasive practices and moves to

cut regulatory corners ….” by “using a variety of underhanded tactics to skirt Department of Transportation oversight ….” (Ex. C at 2); iii) failing to institute mandatory rules, regulations and procedures to ensure proper that its DSP delivery drivers have proper training and qualifications; and iv) failing to ensure that its DSPs properly maintain its delivery on proper working conditions, resulting in “poorly maintained vans, with underinflated and balding tires, cracked or missing sideview mirrors …” (Ex. B).

84. Defendant AMAZON was further directly negligent in its entrustment of the operation of the Amazon Van to Defendant GUILLEN and is vicariously negligent through the careless and reckless operation of the Amazon Van by Defendant GUILLEN in colliding with Plaintiff's sedan resulting in a severe and violent impact.

85. Defendant AMAZON was further negligent in operating, permitting, hiring, supervising, training and otherwise entrusting Defendant GUILLEN to operate its vehicle on public highways.

86. DEFENDANT GUILLEN, as an employee, agent and/or servant of AMAZON, was negligent in multiple respects, including but not limited to, the following: failing to drive the Amazon Van with due regard to the position of other motor vehicles on the public way; failing to keep a proper lookout for and to take heed and cognizance of other vehicles on the public way; failing to apply and/or maintain the braking system of the vehicle so as to avoid said occurrence; failing to be and remain alert while driving; in driving said vehicle at an unreasonable rate of speed under the circumstances; failing to see what was there to be seen; in failing to use that degree of care, caution and prudence required under the circumstances then and there existing; driving and operating the commercial motor vehicle at a greater rate of speed than was prudent and reasonable and sufficiently slow so as to prevent the contact between the two vehicles under the circumstances

and conditions then and there prevailing to the knowledge of the Defendant operator of GUILLEN; failing to stop, signal and/or slow down; carelessly and negligently omitting and failing to provide and/or equip and make use of and/or keep in proper working order and/or permit timely use of adequate and efficient brakes, braking mechanisms, acceleration, steering devices, signaling devices and other mechanisms of the instant motor vehicle under the prevailing circumstances of the roadway and traffic conditions at the point or space of accident; violating those statutes, rules, regulations, and ordinances governing the operation of the Defendant's commercial motor vehicle under the circumstances and conditions then and there existing; and failing to take any and all precautions for the avoidance of said accident.

87. The aforesaid negligent acts and omissions of Defendant GUILLEN, as an agent, employee and/or servant of Defendant AMAZON, were the proximate cause and/or a substantial factor in causing the damages suffered by Plaintiff, MARK HARRISON.

88. Defendant AMAZON was directly negligent for the creation of dangerous rules, regulations and procedures that caused its DSP drivers to drive in a dangerous and unsafe manner and was further directly negligent for the entrustment of the subject vehicle to Defendant GUILLEN, as well as for the negligent maintenance and repair of the Amazon Van.

89. By reason of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendant AMAZON, Plaintiff MARK HARRISON became and was rendered sick, sore, lame, bruised, weak, and disabled; sustained severe and serious injuries in and about diverse parts of his body, including his back and neck, and suffered severe psychological distress.

90. As a result of the subject accident, Plaintiff MARK HARRISON, has received over ten (10) months of medical treatment including physical therapy and epidural shots. Plaintiff continues to receive treatment and may be required to undergo surgery to treat his injuries, all of which are believed

to be permanent and continuing in nature, duration, and effect. In addition, Plaintiff MARK HARRISON has incurred medical and other expenses, has been unable to pursue his usual vocations, and has suffered and will continue to suffer from severe physical and emotional pain as a result of this accident.

91. Following this accident, Plaintiff MARK HARRISON remained partially incapacitated for a significant period of time, and he remains partially disabled to-date. Plaintiff was prevented from attending to his usual duties, and he was compelled to and did seek medical aid, treatment and attention.

92. Plaintiff MARK HARRISON will require further medical aid, treatment, and attention in the future. Plaintiff was compelled to and did expend diverse sums of money in an effort to cure himself and will, in the future, be caused to incur additional expenses for such medical, psychological and other aid. Further, Plaintiff MARK HARRISON will suffer lost earnings and impaired earning capacity as a result of the subject accident.

93. The injuries and damages suffered by the Plaintiff as aforesaid are personal injuries either exempt from or meeting the requirements of one or more of the categories set forth in N.J.S.A. 39:6A-8(a), if said Statute is applicable to the Plaintiff's cause of action as set forth in this Complaint.

94. Due to Defendant AMAZON's negligence, the Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST**
**DEFENDANT LOGISTICS**
(Negligence and Vicarious Liability)

95. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "94" as if more fully set forth herein.

96. On or about April 15, 2023, Defendant LOGISTICS, was the owner of the Amazon Van bearing New Jersey State license plate number XKJM22.

97. On or about April 15, 2023, the Amazon Van was being operated by Defendant GUILLEN with the knowledge and/or consent of the owner, Defendant LOGISTICS, who selected, trained and entrusted Defendant GUILLEN with the operation of the Amazon Van.

98. On or about April 15, 2023, the Amazon Van that Defendant GUILLEN was operating came into contact with, and was otherwise involved in, a violent collision with Plaintiff's sedan near the intersection of Monmouth Street and Second Street, in Jersey City, New Jersey.

99. Upon information and belief, Defendant GUILLEN had a history of prior accidents, close-calls, moving violations, driving infractions, and/or other unsafe driving practices that Defendant LOGISTICS, in the exercise of reasonable care, knew or should have known about, and should not have entrusted Defendant GUILLEN with the responsibility of operating the Amazon Van.

100. Defendant LOGISTICS was negligent in the ownership, operation, maintenance and control of the Amazon Van in violation of Federal, State and Local Regulations, Ordinances, Laws and Vehicle and Traffic Laws to be specifically set forth in discovery.

101. Defendant LOGISTICS was directly negligent in its entrustment of the operation of the Amazon Van to Defendant GUILLEN and was vicariously negligent through the careless and reckless operation of the Amazon Van on the date of the subject accident.

102. Defendant GUILLEN, as an employee, agent and/or servant of Defendant AMAZON, was negligent in multiple respects, including but not limited to, the following: failing to drive the Amazon Van with due regard to the position of other motor vehicles on the public way; failing to keep a proper lookout for and to take heed and cognizance of other vehicles on the

public way; failing to properly appl the braking system of the vehicle so as to avoid said occurrence; failing to be and remain alert while driving; in driving said vehicle at an unreasonable rate of speed under the circumstances; in failing to see what was there to be seen; in failing to use that degree of care, caution and prudence required under the circumstances then and there existing; driving and operating the Amazon Van at a greater rate of speed than was prudent and reasonable, and sufficiently slow so as to prevent the contact between the two vehicles under the circumstances and conditions then and there prevailing; failing to stop, signal and/or slow down; failing to yield; failing to keep a proper lookout and maintain the Amazon Van at a safe speed and distance from other vehicles, thereby creating an emergency situation when one would otherwise not exist; in suddenly and sharply braking; in failing to stay alert and keep the Amazon Van at a proper speed and distance from other vehicles; carelessly and negligently omitting and failing to provide and/or equip and make use of and/or keep in proper working order and/or permit timely use of adequate and efficient brakes, braking mechanisms, acceleration, steering devices, signaling devices and other mechanisms of the instant motor vehicle under the prevailing circumstances of the roadway and traffic conditions at the point or space of accident; violating those statutes, rules, regulations, and ordinances governing the operation of the Amazon Van under the circumstances and conditions then and there existing; and failing to take any and all precautions for the avoidance of said accident.

103. The aforesaid negligent acts and omissions of Defendant GUILLEN, as an employee, agent and/or servant of Defendant LOGISTICS, were the proximate cause and/or a substantial factor in causing the damages suffered by Plaintiff, MARK HARRISON, in that Defendant LOGISTICS was both directly negligent for the entrustment of the subject vehicle to

Defendant GUILLEN, as well as the negligent maintenance and repair of the Amazon Van, as well as vicariously liable for the conduct of its operator Defendant GUILLEN.

104. That by reason of the negligence, carelessness, recklessness, willfulness and wantonness of the Defendant LOGISTICS, Plaintiff MARK HARRISON became and was rendered sick, sore, lame, bruised, weak, and disabled; sustained severe and permanent injuries in and about diverse parts of his body, including his back and neck and has suffered severe psychological distress as well.

105. As a result of the subject accident, Plaintiff MARK HARRISON, has received over ten (10) months of medical treatment including physical therapy and epidural shots. Plaintiff continues to receive treatment and may be required to undergo surgery to treat his injuries, all of which are believed to be permanent and continuing in nature, duration, and effect.

106. To this day, Plaintiff MARK HARRISON continues to experience great pain and suffering and mental anguish.

107. Following this accident, Plaintiff MARK HARRISON remained partially incapacitated for a significant period of time, and he remains partially disabled to-date. Plaintiff was prevented from attending to his usual duties, and he was compelled to and did seek medical aid, treatment and attention.

108. Plaintiff MARK HARRISON will require further medical aid, treatment, and attention in the future. Plaintiff was compelled to and did expend diverse sums of money in an effort to cure and will, in the future, be caused to incur additional expenses for such medical, psychological and other aid. Plaintiff has also suffered lost earnings, and impaired earning capacity, as a result of the subject accident.

109. The injuries and damages suffered by the Plaintiff as aforesaid are personal injuries either exempt from or meeting the requirements of one or more of the categories set forth in N.J.S.A. 39:6A-8(a), if said Statute is applicable to the Plaintiff's cause of action as set forth in this Complaint.

110. Due to Defendant LOGISTICS' negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST DEFENDANT GUILLEN**
**(Negligence)**

111. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "110" as if more fully set forth herein.

112. On or about April 15, 2023, Defendant operated the Amazon Van bearing New Jersey State license plate number XKJM22.

113. On or about April 15, 2023 and at all times herein mentioned, Defendant AMAZON and/or Defendant LOGISTICS gave Defendant GUILLEN permission to operate the aforesaid motor vehicle.

114. On or about April 15, 2023 and at all times herein mentioned, Defendant GUILLEN was employed by Defendant AMAZON and/or Defendant LOGISTICS to operate the aforesaid Amazon Van.

115. On April 15, 2023 the Amazon Van Defendant GUILLEN operated came into contact with, and was otherwise involved in, a violent collision with Plaintiff's sedan.

116. The aforesaid collision was caused by reason of the negligence of Defendant GUILLEN, and in no part by the Plaintiff. Defendant GUILLEN was negligent in the operation

of the Amazon Van in violation of Federal, State and Local Regulations, Ordinances, Laws and Vehicle and Traffic Laws to be specifically named in discovery.

117. On April 15, 2023, Defendant GUILLEN was careless and negligent in his maintenance, control, and operation of the Amazon Van that he operated, which collided with Plaintiff and caused him to suffer severe and permanent injuries.

118. DEFENDANT GUILLEN was negligent in multiple respects, including but not limited to, the following: failing to drive the Amazon Van with due regard to the position of other motor vehicles on the public way; failing to keep a proper lookout for and to take heed and cognizance of other vehicles on the public way; in driving said vehicle at an unreasonable rate of speed under the circumstances; failing to see what was there to be seen; in failing to use that degree of care, caution and prudence required under the circumstances then and there existing; driving and operating the commercial motor vehicle at a greater rate of speed than was prudent and reasonable and sufficiently slow so as to prevent the contact between the two vehicles under the circumstances and conditions then and there prevailing to the knowledge of the Defendant operator of GUILLEN; in failing to stop, signal and/or slow down; in failing to yield; making a sudden, sharp left turn without proper warning to Plaintiff and other drivers; failing to slow down his van in a safe and appropriate manner prior to making the left turn; violating those statutes, rules, regulations, and ordinances governing the operation of the Defendant's commercial motor vehicle under the circumstances and conditions then and there existing; and failing to take any and all precautions for the avoidance of said accident.

119. DEFENDANT GUILLEN was further negligent in violating those statutes, rules, regulations, and ordinances governing the operation of the Defendant's commercial motor vehicle

under the circumstances and conditions then and there existing, in failing to take any and all precautions for the avoidance of said accident.

120. By reason of the negligence, carelessness, recklessness, willfulness and wantonness of Defendant GUILLEN, Plaintiff MARK HARRISON became and was rendered sick, sore, lame, bruised, weak, and disabled; sustained severe and serious injuries in and about diverse parts of his body, including his back and neck, and suffered severe psychological distress.

121. As a result of the subject accident, Plaintiff MARK HARRISON, has received over ten (10) months of physical therapy and epidural shots. Plaintiff continues to receive medical treatment and may be required to undergo surgery to treat his injuries, all of which are believed to be permanent and continuing in nature, duration, and effect.

122. Following this accident, Plaintiff MARK HARRISON remained partially incapacitated for a significant period of time, and he remains partially disabled to-date. Plaintiff was prevented from attending to his usual duties, and he was compelled to and did seek medical aid, treatment and attention.

123. Plaintiff MARK HARRISON will require further medical aid, treatment, and attention in the future. Plaintiff was compelled to and did expend diverse sums of money in an effort to cure himself and will, in the future, be caused to incur additional expenses for such medical, psychological and other aid. Plaintiff will suffer lost earnings, and impaired earning capacity, as a result of the subject accident.

124. The injuries and damages suffered by the Plaintiff as aforesaid are personal injuries either exempt from or meeting the requirements of one or more of the categories set forth in N.J.S.A. 39:6A-8(a), if said Statute is applicable to the Plaintiff's cause of action as set forth in this Complaint.

125. Due to Defendant GUILLEN's negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANT AMAZON**
**(Negligent Entrustment)**

126. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "125" as if more fully set forth herein.

127. Upon information and belief, Defendant GUILLEN had a history of prior accidents, close-calls, moving violations, driving infractions, and/or other unsafe driving practices that Defendant AMAZON, in the exercise of reasonable care, knew or should have known about, and should not have entrusted Defendant GUILLEN entrusted with the responsibility of operating the Amazon Van.

128. Defendant AMAZON knew or should have known that Defendant GUILLEN would negligently operate the Amazon Van, and that Defendant GUILLEN lacked the requisite competence, skill, training, and/or lacked the physical and/or mental ability to reasonably and safely operate and control the Amazon Van.

129. Defendant AMAZON negligently and carelessly hired Defendant GUILLEN and negligently and carelessly entrusted the Amazon Van to Defendant GUILLEN.

130. Defendant AMAZON negligently and carelessly owned, supervised, trained, controlled, and entrusted the Amazon Van, so as to cause it to strike and collide with another commercial vehicle, resulting in injuries to Plaintiff MARK HARRISON.

131. As a direct and proximate result of Defendant's negligence, Plaintiff MARK HARRISON was seriously and permanently injured after the collision between the Amazon Van and his sedan.

132. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of Defendant AMAZON, Plaintiff suffered and will continue to suffer injuries, was forced to undergo extensive medical treatment including physical therapy three times per week for over ten (10) months, and also suffered extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

133. Due to Defendant AMAZON's negligence, the Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**AGAINST Defendant LOGISTICS**
**(Negligent Entrustment)**

134. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "133" as if more fully set forth herein.

135. Upon information and belief, Defendant GUILLEN had a history of prior accidents, close-calls, moving violations, driving infractions, and/or other unsafe driving practices that LOGISTICS in the exercise of reasonable care, knew or should have known about, and should not have entrusted Defendant GUILLEN entrusted with the responsibility of operating the Amazon Van.

136. Defendant LOGISTICS knew or should have known that Defendant GUILLEN would negligently operate the Amazon Van, and that Defendant GUILLEN lacked the requisite competence, skill, training, and/or lacked the physical and/or mental ability to reasonably and safely operate and control the Amazon Van.

137. Defendant LOGISTICS negligently and carelessly hired Defendant GUILLEN and negligently and carelessly entrusted the Amazon Van to Defendant GUILLEN.

138. Defendant LOGISTICS negligently and carelessly owned, supervised, trained, controlled, and entrusted the Amazon Van, so as to cause it to strike and collide with the sedan operated by Plaintiff MARK HARRISON.

139. As a direct and proximate result of Defendant's negligence, Plaintiff MARK HARRISON was seriously and permanently injured after the collision between the Amazon Van and his sedan.

140. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of Defendant LOGISTICS, Plaintiff suffered and will continue to suffer severe physical injuries, and extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

141. Due to Defendant LOGISTICS' negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**AGAINST DEFENDANT AMAZON**
**(Negligent Hiring and Training)**

142. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "141" as if more fully set forth herein.

143. Defendant AMAZON hired Defendant GUILLEN as a delivery driver.

144. Defendant AMAZON failed to properly screen Defendant GUILLEN for his ability to safely and properly operate a commercial vehicle.

145. Defendant AMAZON failed to adequately investigate Defendant GUILLEN's background, driving history, employment history and/or medical conditions.

146. Had Defendant AMAZON properly assessed Defendant GUILLEN's background, driving history, employment history and/or medical conditions, it would have realized that GUILLEN was patently unfit and unqualified to operate a commercial vehicle.

147. Defendant AMAZON also failed to fully, properly and adequately train Defendant GUILLEN as a driver of their commercial delivery vehicle.

148. In particular, Defendant AMAZON failed to train Defendant GUILLEN, and other drivers similarly situated to her, about the proper rules, regulations, guidelines and procedures for: i) operating the vehicle at a safe speed at all times; ii) maintaining proper sightlines and distances between other vehicles on the highway; iii) checking for "blindspots" on the vehicle's sides and rear; iv) avoiding sudden and rapid turns; and v) the inherent dangers of making left turns when operating a large-sized commercial vehicle.

149. Defendant AMAZON's failure to properly train GUILLEN was not an isolated incident. In fact, AMAZON has a pattern and practice of failing to properly train its drivers how to safely operate its delivery vans, resulting in multiple and severe accidents involving AMAZON vehicles.

150. In fact, "[p]ublic records document *hundreds of road wrecks* involving vehicles delivering Amazon packages in the past five years, with Amazon itself named as a Defendant in at least *100 lawsuits* filed in the wake of accidents, including at least six fatalities and numerous serious injuries." BuzzFeedNews.com, *The Cost of New-Day Delivery*," last viewed on July 5, 2020. (Ex. B) (emphasis supplied).

151. Prior to the subject accident, Defendant AMAZON was aware, had knowledge and notice regarding the deficiencies in its training program, as evidenced by the large number of accidents that have occurred involving vehicles making AMAZON deliveries.

152. Prior to the subject accident, Defendant AMAZON was further aware that Defendant GUILLEN was not properly trained as a commercial vehicle while on the job and driving vehicles for Defendant AMAZON.

153. Defendant AMAZON failed to use reasonable care to prevent harm to MARK HARRISON, given that Defendant AMAZON had notice and knowledge of the deficiencies in its training program, and that Defendant GUILLEN drove the Amazon Van without the proper competence, experience, skill and training as a delivery driver.

154. Defendant AMAZON continued to employ Defendant GUILLEN after becoming aware and learning of his improper driver training and did not take any action to suspend his employment status as a delivery driver for their company.

155. Defendant AMAZON acted with willful, conscious and reckless disregard of MARK HARRISON, and Plaintiff's rights and the consequences of its actions to benefit itself financially. These actions were conducted by and with full knowledge of the officers, directors, and managing agents of AMAZON.

156. As a proximate result of Defendant AMAZON's negligence, Plaintiff MARK HARRISON was permanently and seriously injured when the Amazon Van operated by Defenant GUILLEN collided with Plaintiff's sedan.

157. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of AMAZON, Plaintiff MARK HARRISON suffered and will continue to severe physical injuries, and extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

158. Defendant AMAZON's negligence was a substantial factor in causing Plaintiff MARK HARRISON' injuries.

159. Due to Defendant AMAZON's negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($ 3,000,000.00) DOLLARS.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT LOGISTICS**
**(Negligent Hiring and Training)**

160. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "159" as if more fully set forth herein.

161. Defendant LOGISTICS hired Defendant GUILLEN as a delivery driver.

162. Defendant LOGISTICS failed to properly screen Defendant GUILLEN for his ability to safely and properly operate a commercial vehicle.

163. Defendant LOGISTICS failed to adequately investigate Defendant GUILLEN's background, driving history, employment history and/or medical conditions.

164. Had Defendant LOGISTICS properly assessed Defendant GUILLEN's background, driving history, employment history and/or medical conditions, it would have realized that GUILLEN was patently unfit and unqualified to operate a commercial delivery vehicle.

165. Defendant LOGISTICS also failed to fully, properly and adequately train Defendant GUILLEN as a driver of their commercial van.

166. In particular, Defendant LOGISTICS failed to train Defendant GUILLEN, and other drivers similarly situated to her, about the proper rules, regulations, guidelines and procedures for: i) operating the vehicle at a safe speed at all times; ii) maintaining proper sightlines and distances between other vehicles on the highway; iii) checking for "blindspots" on the vehicle's sides and rear; iv) avoiding sudden and rapid turns; and v) the inherent dangers of making left turns when operating a large-sized commercial vehicle.

167. Defendant LOGISTICS was aware, had knowledge and notice that Defendant GUILLEN was not properly trained as a delivery driver, while on the job and driving vehicles for Defendant LOGISTICS.

168. Defendant LOGISTICS failed to use reasonable care to prevent harm to Plaintiff MARK HARRISON, given that Defendant LOGISTICS had notice and knowledge that Defendant GUILLEN drove the commercial vehicle without the proper competence, experience, skill and training as a delivery driver.

169. Defendant LOGISTICS continued to employ Defendant GUILLEN after becoming aware and learning of his improper driver training and did not take any action to suspend his employment status as a delivery driver for their company.

170. Defendant LOGISTICS acted with willful, conscious and reckless disregard of MARK HARRISON, and Plaintiff's rights and the consequences of its actions to benefit itself financially. These actions were conducted by and with full knowledge of the officers, directors, and managing agents of Defendant LOGISTICS.

171. As a proximate result of Defendants' negligence, Plaintiff MARK HARRISON, was permanently and seriously injured when the Amazon Van operated by Defendant GUILLEN, collided with him.

172. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of Defendants, Plaintiff MARK HARRISON suffered and will continue to suffer severe physical injuries as well as extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

173. Defendant LOGISTICS' negligence was a substantial factor in causing Plaintiff's harm.

174. Due to Defendant LOGISTICS' negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**AGAINST DEFENDANT AMAZON**
**(Negligent Supervision)**

175. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "174" as if more fully set forth herein.

176. Defendant AMAZON further claims that it rigorously supervises its drivers during each and every trip to ensure that its drivers adhere to proper safety standards and operate delivery vehicles in a safe manner.

177. Notwithstanding these claims, prior to the subject accident, Defendant AMAZON failed to properly supervise and Defendant GUILLEN as a driver of their commercial delivery vans.

178. In particular, Defendant AMAZON failed to supervise Defendant GUILLEN regarding his unsafe and erratic driving prior to the occurrence of the subject accident.

179. Defendant AMAZON failed to use reasonable care to prevent harm to MARK HARRISON, given that Defendant AMAZON had notice and knowledge that Defendant GUILLEN was making deliveries on behalf of Amazon in an unsafe and erratic manner.

180. Defendant AMAZON acted with willful, conscious and reckless disregard of MARK HARRISON, and Plaintiff's rights and the consequences of its actions to benefit itself financially. These actions were conducted by and with full knowledge of the officers, directors, and managing agents of AMAZON.

181. As a proximate result of Defendant AMAZON's negligence, Plaintiff MARK HARRISON was permanently and seriously injured when the Amazon Van operated by Defendant

GUILLEN who suddenly, and any warning, executed a sharp left turn to leave the illegal parking spot.

182. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of AMAZON, Plaintiff MARK HARRISON suffered and will continue to suffer from severe physical injuries, as well as from extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

183. Defendant AMAZON's negligence was a substantial factor in causing Plaintiff MARK HARRISON's harm.

184. Due to Defendant AMAZON's negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR AN NINTH CAUSE OF ACTION**
**AGAINST DEFENDANT LOGISTICS**
**(Negligent Supervision)**

185. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "184" as if more fully set forth herein.

186. LOGISTICS claims that it rigorously supervises its drivers during each and every trip to ensure that its drivers adhere to proper safety standards and operate their commercial delivery vehicles in a safe manner.

187. Notwithstanding these claims, prior to the subject accident, Defendant LOGISTICS failed to properly supervise and Defendant GUILLEN as a driver of their commercial delivery vans.

188. In particular, Defendant LOGISTICS failed to supervise Defendant GUILLEN regarding his unsafe and erratic driving prior to the occurrence of the subject accident.

189. Defendant LOGISTICS failed to use reasonable care to prevent harm to MARK HARRISON, given that Defendant LOGISTICS had notice and knowledge that Defendant GUILLEN was making deliveries on behalf of Amazon in an unsafe and erratic manner.

190. Defendant LOGISTICS acted with willful, conscious and reckless disregard of MARK HARRISON, and Plaintiff's rights and the consequences of its actions to benefit itself financially. These actions were conducted by and with full knowledge of the officers, directors, and managing agents of LOGISTICS.

191. As a proximate result of Defendant LOGISTICS' negligence, Plaintiff MARK HARRISON was permanently and seriously injured when the Amazon Van operated by Defendant GUILLEN who suddenly, and any warning, executed a sharp left turn to leave the illegal parking spot.

192. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of LOGISTICS, Plaintiff MARK HARRISON suffered and will continue to suffer from severe physical injuries, as well as from extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

193. Defendant LOGISTICS' negligence was a substantial factor in causing Plaintiff MARK HARRISON's harm.

194. Due to Defendant AMAZON's negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR AN TENTH CAUSE OF ACTION**
**AGAINST DEFENDANT AMAZON**
**(Maintenance and Repair)**

195. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "194" as if more fully set forth herein.

196. On or about April 15, 2023, the Amazon Van owned by Defendant AMAZON and operated by Defendant GUILLEN came into contact with, and was otherwise involved in, a violent collision with Plaintiff's sedan.

197. On or about April 15, 2023, the Amazon Van was in a dangerous and unsafe condition, and had been in such a dangerous and unsafe condition for a period of time prior thereto, after Defendant became aware that the vehicle's sideview mirrors and/or electronic warning alerts were in disrepair and defective.

198. Defendant AMAZON had actual knowledge of the aforesaid dangerous, defective, and hazardous conditions of the subject vehicle but failed to remedy same.

199. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of AMAZON, Plaintiff MARK HARRISON suffered and will continue to suffer from severe physical injuries, as well as from extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

200. Defendant LOGISTICS' negligence was a substantial factor in causing Plaintiff MARK HARRISON's harm.

201. Due to Defendant AMAZON's negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR ELEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT LOGISTICS**
**(Maintenance and Repair)**

202. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "201" as if more fully set forth herein.

203. On or about April 15, 2023, the Amazon Van owned by Defendant LOGISTICS and operated by Defendant GUILLEN came into contact with, and was otherwise involved in, a violent collision with Plaintiff's sedan.

204. On or about April 15, 2023, the Amazon Van was in a dangerous and unsafe condition, and had been in such a dangerous and unsafe condition for a period of time prior thereto, after Defendant LOGISTICS became aware that the vehicle's sideview mirrors and/or electronic warning alerts were in disrepair and defective.

205. Defendant LOGISTICS had actual knowledge of the aforesaid dangerous, defective, and hazardous conditions of the subject vehicle but failed to remedy same.

206. As a direct and legal result of the negligence, carelessness, recklessness and/or other tortious conduct of LOGISTICS, Plaintiff MARK HARRISON suffered and will continue to suffer from severe physical injuries, as well as from extreme and severe distress, pain, anguish, psychological distress, and other economic and non-economic damages in amounts to be proved at trial.

207. Defendant LOGISTICS' negligence was a substantial factor in causing Plaintiff MARK HARRISON's harm.

208. Due to Defendant LOGISTICS' negligence, Plaintiff MARK HARRISON is entitled to damages in the sum of THREE MILLION ($3,000,000.00) DOLLARS.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**AGAINST DEFENDANT AMAZON**
**(Punitive Damages)**

209. Plaintiff, MARK HARRISON, repeats and reiterates paragraphs "1" through "208" as if more fully set forth herein.

210. As set forth above Amazon has engaged in willful and deliberate attempts to avoid federal safety regulations and DOT oversight.

211. Specifically, Amazon has intentionally attempted to circumvent DOT's safety regulations, which U.S. Senators have described as "Amazon's evasive practices and moves to cut regulatory corners …." by "using a variety of underhanded tactics to skirt Department of Transportation oversight …." (Ex. C at 2).

212. Amazon's willful and deliberate attempts to evade DOT safety regulations have resulted in delivery vehicles which are unsafe, dangerous and lacking in critical safety equipment, and have caused many accidents, including the accident herein.

213. Amazon's flagrant disregard for safety is egregious in nature and poses a substantial risk of harm to the public at large in the future.

214. According, an award of punitive damages is warranted to punish Amazon for its deliberate flouting of federal safety rules, regulations, procedures and guidelines, and to deter other delivery companies from engaging in similar intentional acts and acts of gross negligence.

**WHEREFORE**, Plaintiff MARK HARRISON demands judgment against Defendant AMAZON, LOGISTICS and GUILLEN, for the total sum of three million dollars ($3,000,000.00) in compensatory damages, and five million dollars ($5,000,000.00) in punitive damages against Defendant AMAZON, together with the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 7, 2024

Yours, etc.

**JON L. NORINSBERG, ESQ., PLLC**

By: ______________________________

Diego O. Barros, Esq.
*Attorneys for Plaintiff*
110 East 59th Street, Suite 2300
New York, NY 10022
Tel. No.: (212) 791-5396
Direct No.: (347) 277-7327
Fax No.: (212) 406-6890
E-mail: diego@norinsberglaw.com